NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| LAURA GRANDE, individually; ANNMARIE GRANDE, a minor by her parent and guardian ad litem Laura Grande; and RICHARD GRANDE, husband of Laura Grande and father of Annmarie Grande, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 12-1968 (JAP) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| KEANSBURG BOROUGH; CHIEF OF POLICE RAYMOND O'HARE; DEPUTY CHIEF OF POLICE MICHAEL PIGOTT; JOHN MAGNER; JOHN DOES 1-5, Keansburg Borough Police Officers; and JOHN DOES 6-10, Personnel and/or Police Officers of the Keansburg Borough Police Department in supervisory capacities, | : | |
| | : | |
| Defendants. | : | |

_____

This matter concerns § 1983 claims for excessive force and abuse of process filed by Plaintiffs Laura Grande, her daughter Annmarie Grande, and her husband Richard Grande (collectively "Plaintiffs") against Defendants Keansburg Borough, Chief of Police Raymond O'Hare ("Chief O'Hare"), Deputy Chief Michael Pigott ("Deputy Chief Pigott"), and Officer John Magner ("Officer Magner") (collectively "Defendants"). Plaintiffs allege that Officer Magner used excessive force against Laura and Annmarie when he went to Plaintiffs' house to execute a warrant. Presently before the Court is Defendants' Partial Motion to Dismiss [docket # 9]. The Court heard oral argument on May 14, 2013. *See* Fed. R. Civ. P. 78. For the reasons outlined below, the Motion is granted in part and denied in part.

# I.     BACKGROUND[1]

On April 22, 2010, Officer Magner, a police officer in the Keansburg Police Department, went to Plaintiffs' residence to execute an arrest warrant on Plaintiff Laura Grande for failing to appear for an ordinance violation.[2]  Officer Magner allegedly entered Plaintiffs' residence and "assaulted" Laura and Annmarie, who was eleven years old at the time, "without justification and with excessive force," causing them various injuries.  Compl., page 3, ¶ 4.  According to a police report, Annmarie struck the "police officer, who was effecting an arrest, while attempting to interfere with and prevent the arrest" [docket # 9, Ex. B][3].

As a result of this incident, Plaintiff Annmarie was charged with:  (1) aggravated assault on a police officer in the fourth degree in violation of N.J.S.A. 2C:12-1.b(5)(a); (2) hindering apprehension or prosecution in violation of N.J.S.A. 2C:29-3.a(5); and (3) obstructing administration of law or other governmental function in violation of N.J.S.A. 2C:29-1.a.    She was tried in juvenile court and was adjudicated delinquent of aggravated assault in the fourth degree and hindering apprehension; the obstruction charge merged into the aggravated assault charge.  The Juvenile Order of Disposition states that the disposition will be deferred for a

---

[1]  In addressing a motion to dismiss, the Court must accept as true the allegations contained in the Complaint.  *See Levkovsky v. New Jersey Advisory Comm. on Judicial Conduct*, 2012 WL 3715981, *1 n. 1 (D.N.J. Aug. 27, 2012).  The Court "may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiff's claim."  *Hendrix v. City of Trenton*, 2009 WL 5205996, *3 (D.N.J. Dec. 29, 2009).  Thus, the facts below are taken from Plaintiff's Complaint filed on October 1, 2012, matters of public record, and any documents specifically referred to in the pleadings, unless otherwise indicated.  *See Interfaith Cmty. Org. v. AlliedSignal, Inc.*, 928 F. Supp. 1339, 1345 (D.N.J. 1996) (stating "[a] court may consider undisputedly authentic documents a defendant attaches to a motion to dismiss if the plaintiff's claims are based on those documents").  The facts in this "Background" section do not represent the Court's factual findings.

[2] This is not the first time these parties have interacted.  Prior to April 22, 2010, Officer Magner, Chief O'Hare, and Deputy Chief Pigott allegedly engaged in a campaign of harassment against Plaintiffs because they complained to the Borough of Keansburg about the way in which snow was removed and placed on an empty lot adjacent to their home.

[3] Although the police report of the incident was not contained in the Complaint and is not a matter of public record to be considered on a Rule 12(b)(6) motion, the Court includes this statement to provide a more complete account of the facts of this case.  The Court will not rely on the police report in rendering its decision on this 12(b)(6) motion.

"period of months" and "[c]ompliance with the conditions of the Order will result in matter being dismissed on January 31, 2012 assuming conditions are met" [docket # 9, Ex. C, Juvenile Order of Disposition][4]. Plaintiff Laura was charged with, and indicted by a grand jury for: (1) aggravated assault in the third degree in violation of N.J.S.A. 2C:12-1B(5)(A); (2) resisting arrest in the third degree in violation of 2C:29-2A(3); and (3) obstruction of the administration of law in violation of 2C:29-1A. After a trial in Monmouth County Superior Court, she was found guilty of a lesser included resisting arrest offense and ordered to pay fines.

On October 1, 2012, Plaintiffs filed a Complaint, alleging that: (1) Officer Magner used excessive force against Plaintiffs Laura and Annmarie in violation of § 1983; (2) Officer Magner and Deputy Chief Pigott engaged in abuse of process in violation of § 1983; (3) Chief O'Hare and Deputy Chief Pigott are liable as supervisors under § 1983; (4) Keansburg Borough, Chief O'Hare, and Deputy Chief Pigott are liable under § 1983 because an official policy, practice, or custom caused Plaintiffs' injuries; (5) prospective injunctive relief is warranted, enjoining Keansburg Borough, Chief O'Hare, and Deputy Chief Pigott "from engaging in, encouraging, teaching, promoting or training" police officers in "falsely arresting, maliciously prosecuting, maliciously abusing process, and/or using excessive force against citizens and/or arrestees," compelling Defendants "to take prompt, appropriate and corrective measures to prevent" the practices above, compelling Defendants "to provide regular and consistent training sessions" to Keansburg police officers, compelling Defendants "to implement a system whereby prompt, appropriate action is taken against any" Keansburg police officer "who engages in, teaches and/or condones falsely arresting, maliciously prosecuting, maliciously abusing process and/or using excessive force against citizens and/or arrestees," enjoining Defendants "from arresting

---

[4] The parties did not inform the Court whether Plaintiff Annmarie complied with the Order and whether the matter was dismissed.

citizens without adequate probable cause, physically abusing and using excessive force" against them, enjoining Defendants from employing Office Magner as an officer "in any capacity except for clerical duty," enjoining him from patrol duty, and enjoining him from making arrests, assisting in making arrests and using any force in making arrests and/or assisting in making arrests"; (6) Defendants assaulted and battered Plaintiffs in violation of state law; (7) Defendants engaged in an abuse of process in violation of state law; (8) Defendants violated the New Jersey Civil Rights Act; (9) Defendants caused intentional infliction of emotional distress; (10) Plaintiff Richard Grande brought a loss of consortium claim for the services of his wife Laura; (11) Plaintiffs Richard and Laura brought a loss of consortium claim for the companionship and society of daughter Annmarie; and (13) Officer Magner was negligent.

Defendants filed the Partial Motion to Dismiss currently at issue on October 1, 2012, seeking to dismiss the following claims from the Complaint: (1) any § 1983 claims against the Keansburg Police Department; (2) Plaintiff Annmarie's § 1983 excessive force claim; (3) Plaintiff Annmarie's § 1983 abuse of process claim; (4) Plaintiffs' § 1983 claim against Chief O'Hare and Deputy Chief Pigott in their personal capabilities; (5) Plaintiffs' allegations against Keansburg Borough, Chief O'Hare, and Deputy Chief Pigott based on respondeat superior[5] or personal involvement; (6) loss of consortium; (7) Plaintiffs' state law claims; (8) Plaintiffs' state law abuse of process claim; and (9) the punitive damages claim under § 1983 or the NJCRA against Keansburg Borough.

---

[5] Respondeat superior is when an entity is "liable solely because it employs a tortfeasor." *Gibson v. Superintendent of N.J. Dep't of Law and Public Safety – Div. of State Police*, 2009 WL 900854, *4 (D.N.J. Mar. 31, 2009) (internal quotation omitted).

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed for "failure to state a claim upon which relief can be granted."  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Therefore, in order to withstand a motion to dismiss pursuant to 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The plausibility standard is not a "probability requirement," but "it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  To decide if a complaint meets this plausibility standard and therefore, survives a motion to dismiss, the Third Circuit has required a three step analysis:  (1) the Court must "outline the elements a plaintiff must plead to . . . state a claim for relief"; (2) the Court must identify "those allegations that are no more than conclusions and thus not entitled to the assumption of truth"; and (3) "where there are well-pleaded factual allegations, [the Court] should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

## B. § 1983 Claims Against Keansburg Police Department

Defendants argue that if Plaintiffs alleged a § 1983 claim against the Keansburg Police Department, the claim must be dismissed because the Police Department is not a person under § 1983. Plaintiffs contend that they never asserted a claim against the Police Department. Thus, this argument is moot because Plaintiffs did not allege a claim against the Police Department.

## C. Plaintiff Annmarie's § 1983 Excessive Force Claim

Defendants argue that Plaintiff Annmarie's § 1983 excessive force claim is barred by the *Heck* doctrine, which prevents a plaintiff from bringing a § 1983 claim against a police officer if the plaintiff was found guilty of aggravated assault against the police officer. Defendants explain that because Annmarie was adjudicated delinquent of aggravated assault, the Court found her to have exceeded the force exerted by Officer Magner; thus, if a jury in this case finds that Officer Magner used excessive force, then this means the amount of force he used would be greater than the amount of force Annmarie used, thereby invalidating the aggravated assault conviction. Plaintiffs, however, argue that: (1) the claim was properly pled; (2) the *Heck* doctrine does not bar an eleven year old, who was adjudicated delinquent, from bringing an excessive force claim; (3) the excessive force occurred after the aggravated assault; and (4) the Court should look at the facts of the particular case in determining if the *Heck* doctrine applies. Defendants filed a reply brief, again arguing that Annmarie's excessive force claim was barred by the *Heck* doctrine.

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

> citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

[42 U.S.C. § 1983.]

"To state a claim under § 1983, a plaintiff must allege [(1)] the violation of a right secured by the Constitution and laws of the United States"; and (2) "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Robinson v. Temple Univ. Health Servs.*, 2012 WL 6183603, *2 (3d Cir. Dec. 12, 2012). All "claims that law enforcement officers have used excessive force . . . in the course of an arrest," as here, "should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). The Fourth Amendment reasonableness test is "'whether, under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Graham*, 490 U.S. at 397). The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene . . . ." *Id.*

The *Heck* doctrine, however, may bar a § 1983 excessive force claim if the plaintiff has been convicted of aggravated assault. The *Heck* doctrine provides that "in order to recover damages . . . a § 1983 plaintiff must prove that the [underlying] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The *Heck* doctrine requires the Court to

> consider whether a judgment in favor of the plaintiff [in the § 1983 suit] would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some bar to the suit.
>
> [*Id.* at 487.]

In other words, "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005). The purposes of the *Heck* doctrine are "to avoid parallel litigation of probable cause and guilt" and "prevent[] the claimant from succeeding in a tort action after having been convicted in the underlying criminal prosecution, which would run counter to the judicial policy against creating two conflicting resolutions arising from the same transaction." *Id.*

In evaluating whether *Heck* bars a § 1983 claim, the Court must first determine whether a plaintiff's "conviction or sentence has been reversed or called into question," *Feeney v. Powell*, 2008 WL 2478385, *3 (D.N.J. Jun. 17, 2008), or in other words, whether "there was a favorable termination" of the conviction or sentence, *Hendrix v. City of Trenton*, 2009 WL 5205996, *5 (D.N.J. Dec. 29, 2009). If the conviction or sentence was not reversed or called into question, then the Court must examine whether a favorable result regarding the § 1983 claim implies the invalidity of Plaintiff's conviction. *See id.* In order to conduct this analysis, the Court must

"compare the elements of the underlying charges . . . with Plaintiff's" excessive force claim, *id.*, "to determine whether success on the § 1983 claim requires negation of an element of one of the criminal offenses 'or proof of a fact that is inherently inconsistent with one underlying the criminal conviction,'" *Feeney*, 2008 WL 2478385, at *3. In conducting this analysis under the Rule 12(b)(6) framework, this Court is mindful that it "cannot rely upon Defendant's factual assertions" but must "view[] the Complaint in the light most favorable to Plaintiff" and look at matters of public record, like the charge and Juvenile Order of Disposition. *Hendrix*, 2009 WL 5205996, at *8.

Here, the *Heck* doctrine bars Plaintiff Annmarie's § 1983 excessive force claim. Plaintiff was adjudicated delinquent of aggravated assault in the fourth degree and hindering apprehension. It is unclear, however, whether there was a favorable termination of the juvenile delinquency charge because the Juvenile Order of Disposition states that the disposition will be deferred for a "period of months" and "[c]ompliance with the conditions of the Order will result in matter being dismissed on January 31, 2012 assuming conditions are met." Neither party has informed the Court whether Annmarie complied with the Order's conditions and whether the matter was dismissed, so relying on the information before the Court, including factual assertions in the pleadings and matter of public record, Plaintiff Annmarie's juvenile adjudication was not favorably terminated.

This Court will next examine whether a favorable result on Plaintiff Annmarie's § 1983 claim for excessive force would imply the invalidity of her aggravated assault conviction. Under New Jersey law, the elements of aggravated assault on a police officer are "(1) the defendant attempted to cause bodily injury to a law enforcement officer acting in performance of his duties while in uniform or exhibiting evidence of his authority; and (2) the defendant knew that the

victim was a law enforcement officer acting in performance of his duties, while in uniform or exhibiting evidence of his authority." *Feeney*, 2008 WL 2478385, at *4 (citing N.J.S.A. 2C:12-1(b)(5)). Self-defense is a defense to a charge of assault in the context of "fighting back during an arrest" if "the person arrested uses no greater force than that employed by the officer." *Id.* In other words, "to be guilty of assault, the person being arrested must 'use[] an amount of force greater than the amount of force used by an officer allegedly using excessive force." *Id.* Thus, an aggravated assault conviction is "fatally at odds with [a] . . . Fourth Amendment claim" for excessive force. *Id.* at *5. Thus, in cases where there is an aggravated assault conviction, the *Heck* doctrine applies to bar the excessive force claim. *See*, *e.g.*, *Feeney*, 2008 WL 2478385, at *5 (stating that plaintiff's "convictions for aggravated assault preclude his Fourth Amendment [excessive force] claim" because plaintiff and the police officer engaged in an "uninterrupted physical struggle"). However, in "certain factual circumstances[,] *Heck* does not bar a plaintiff's excessive force claim against the arresting officer, even when that plaintiff has pled guilty to, or was convicted of assault . . . ." *Hendrix*, 2009 WL 5205996, at *7. For example, in one such circumstance, the officer applies excessive force when plaintiff has already been subdued. *Id.* In this instance, the officer's force may be excessive because the plaintiff is "no longer a threat to the officer's safety." *Id.*

Applying these principles to Plaintiff Annmarie, the *Heck* doctrine bars her excessive force claim. She was adjudicated delinquent for aggravated assault, meaning she used a greater amount of force than Officer Magner. Thus, a favorable result on her excessive force claim would invalidate the aggravated assault adjudication. Moreover, the Complaint does not contain sufficient factual information to show that Officer Magner engaged in excessive force after

Annmarie was already subdued or arrested, meaning this case does not fit the scenario where *Heck* would not apply to bar an excessive force claim.

Although Plaintiffs argue that the *Heck* doctrine does not bar an eleven year old who was adjudicated delinquent from bringing an excessive force claim, Plaintiffs' argument is without merit.  First, the *Heck* doctrine applies to juvenile adjudications.  *See Adkins v. Johnson*, 482 Fed. Appx. 318, 319 (10th Cir.) (stating that "the district court correctly ruled that *Heck* . . . bars a suit for damages based on the allegations that implicate the validity of the five juvenile judgments"), *cert. denied*, 133 S.Ct. 439 (2012); *Morris v. City of Detroit*, 211 Fed. Appx. 409, 411 (6th Cir. 2006) (stating that "a juvenile adjudication" is the "functional equivalent" of a criminal proceeding and *Heck* applies to the case); *Dominguez v. Shaw*, 2011 WL 4543901, *2 (D. Ariz. Sept. 30, 2011); *Clark v. Conahan,* 737 F. Supp. 2d 239, 254 (M.D. Pa. 2010); *Knight v. Thomas,* 2008 WL 1957905, at *8–9 (N.D. Ind. May 2, 2008).  Second, the purposes of the *Heck* doctrine are well served by this Court's decision.   One purpose of the *Heck* doctrine is to prevent Plaintiff "from succeeding in a tort action after having been convicted in the underlying criminal prosecution, which would run counter to the judicial policy against two conflicting resolutions arising from the same transaction." *Gilles*, 427 F.3d at 209.  Because an aggravated assault conviction is "fatally at odds with [a] . . . Fourth Amendment claim" for excessive force, a favorable result for Plaintiff on her excessive force claim would create two conflicting resolutions arising from the same transaction. *Feeney*, 2008 WL 2478385, at *5.  The *Heck* doctrine applies here to prevent this result.  Thus, the facts of this case — specifically, that Plaintiff Annmarie, an eleven year old, was adjudicated delinquent instead of convicted for aggravated assault — do not prohibit this Court from applying the *Heck* doctrine to her excessive force claim.

Thus, the *Heck* doctrine bars Plaintiff Annmarie's excessive force claim, and consequently, this claim will be dismissed.

### D.  Plaintiff Annmarie's Abuse of Process Claim

Defendants argue that Plaintiff Annmarie's abuse of process claim fails because her arrest was not "based upon some objective other than for what it was intended" (Db16[6]).  Defendants explain that Officer Magner arrested Annmarie for aggravated assault, hindering apprehension, and obstruction, and she was convicted of all of these claims; therefore, there was no perversion of the legitimate use of process.  Plaintiffs, however, assert that they properly pled the abuse of process claim because the Complaint shows that Defendants used legal process to accomplish an ulterior purpose for which it was not designed or intended — specifically, Officer Magner and Deputy Chief Pigott participated in a campaign of harassment against Plaintiffs after they complained to Keansburg Borough about snow removal.  Defendants replied, again arguing that Annmarie's abuse of process claim must be dismissed for failure to state a claim because Defendants did not have an ulterior motive for the use of process against Annmarie.  Instead, Defendants explain that Office Magner initially went to Plaintiffs' home to arrest Laura, and Annmarie's arrest was secondary.  Defendants again note that Annmarie was arrested and charged with aggravated assault, hindering apprehension, and obstruction, and she was adjudicated delinquent of all these charges, thereby also showing that Officer Magner did not have an ulterior motive.

Abuse of process "occurs when a prosecution is initiated legitimately [but] thereafter is used for a purpose other than that intended by law."  *Avaya, Inc. v. Cisco Sys., Inv.*, 2012 WL

---

[6] "Db" means "Defendants' brief" and "Drb" means "Defendants' reply brief."

2065536, *3 (D.N.J. Jun. 7, 2012) (internal quotation omitted).  To establish a claim for abuse of process, a plaintiff must allege:  (1) an ulterior motive; and (2) a "further act after the issuance of process representing the perversion of the legitimate use of the process."  *Id.* (internal quotation omitted).  An ulterior motive "can be inferred from the 'improper act,'" but "[i]f the act is proper, . . . the motive is immaterial . . . because '[i]n the absence of some coercive or illegitimate use of the judicial process, there can be no claim for its abuse."  *Id.*  The further acts element "may be met by pleading that a party 'had secured issuance of the process without reason or probable cause as evidence that [its] ultimate intent was to use it for a purpose ulterior to the one for which it was designed.'"  *Id.*  A "perversion of an otherwise legitimate process exists only where the process is used to 'coerce or oppress' another party or the process is used in a manner not contemplated by law."  *Id.* at *4.  If a "party carries out process to its authorized conclusion," even though the party has "bad intentions, there is no valid claim for abuse of process."  *Id.*

Here, the Complaint does not contain sufficient factual matter for Plaintiff Annmarie to state an abuse of process claim that is plausible on its face.  The Complaint alleges that Officer Magner arrived at Plaintiffs' residence "to execute an arrest warrant on Plaintiff Laura Grande for failing to appear on a local ordinance violation," and Officer Magner entered Plaintiffs' residence and assaulted Plaintiffs Laura and Annmarie "without justification and with excessive force."  Compl., page 3, ¶¶ 2, 4.  Based on matters of public record, Plaintiff Annmarie was charged and adjudicated delinquent of aggravated assault on a police officer, hindering apprehension, and obstruction.  Regarding the abuse of process claim, Plaintiffs allege that "after the initial issuance of process against Plaintiffs Laura Grande and Annmarie Grande," Defendants "used such 'process' to accomplish some ulterior purpose for which it was not

designed or intended, or which was not the legitimate purpose of the particular process employed." Compl., page 4, ¶ 2. Plaintiffs allege that Defendants "engaged in a campaign of harassment against" Plaintiffs "because they complained to . . . the Borough . . . about the manner in which snow was removed and placed on an empty lot next to their home." Compl., page 4-5, ¶ 3. Additionally, Plaintiffs allege that Defendants "maliciously, intentionally, recklessly, and/or negligently misrepresented the facts of their encounter with Plaintiffs . . . and their subsequent arrest and detention; falsified police and/or other official records, and mishandled and/or withheld evidence to initiate and/or instigate a criminal prosecution of Plaintiffs." Compl., page 5, ¶4. Plaintiffs allege that Defendants misrepresented the facts because they "knew that the complaints initiated against Plaintiffs Laura . . . and Annmarie . . . were groundless and made misrepresentations to gain an advantage over Plaintiffs' certain constitutional claims and/or to protect their interest in their employment and/or to protect themselves from criminal prosecution and civil liability." Compl., page 5, ¶ 5. Yet, none of these allegations state a claim for abuse of process on behalf of Plaintiff Annmarie. The process at issue in Plaintiff Annmarie's abuse of process claim is her arrest. *See Marable v. W. Pottsgrove Twp.*, 176 Fed. Appx. 275, 281 (3d Cir. 2006) (stating arrest is "a form of legal process"). Plaintiffs do not allege an ulterior motive for the arrest. Although Plaintiffs allege that Defendants engaged in a campaign of harassment prior to arriving at Plaintiffs' residence on April 22, 2010 to arrest Laura, Plaintiffs have failed to allege how this alleged campaign of harassment constitutes an ulterior motive for arresting Annmarie. Instead, the alleged facts and matters of public record show that Plaintiff Annmarie was arrested and charged with aggravated assault on a police officer, hindering apprehension, and obstruction, all of which she was adjudicated delinquent for, meaning Defendants did not have an ulterior purpose in arresting her.

Moreover, Plaintiffs have not alleged a further act. The "further act must occur *after* the issuance of process." *Securimetrics, Inc. v. Iridian Technologies, Inc.*, 2005 WL 1140689, *5 (D.N.J. May 13, 2005). After Annmarie was served with process Plaintiffs allege that Defendants misrepresented the facts of their encounter with Plaintiffs. Plaintiffs, however, have not alleged an abuse of process because Annmarie's arrest, the process, was not "used for a purpose other than that intended by law." *Avaya, Inc.*, 2012 WL 2065536, at *3. Process was "carrie[d] out . . . to its authorized conclusion" against Plaintiff Annmarie. *Id.* at *4. As a result, the abuse of process claim against Plaintiff Annmarie must be dismissed.

### E.    § 1983 Claims Against Chief O'Hare & Deputy Chief Pigott in Their Personal Capacities

Defendants argue that Plaintiffs have failed to state a § 1983 claim against Chief O'Hare and Deputy Chief Pigott in their personal capacities because it is clear from the caption, description of Defendants as parties, and description of them as supervisors that Plaintiffs have sued them in their official capacities. Nevertheless, Defendants note that the Complaint states that all Defendants are being sued in their individual and official capacities, and if this is the case, then Defendants contend that Plaintiffs have failed to state a claim against Chief O'Hare and Deputy Chief Pigott in their individual capacities because the claims are conclusory. Defendants assert that Plaintiffs have not shown that Chief O'Hare and Deputy Chief Pigott violated Plaintiffs' constitutional rights. Plaintiffs, however, argue that they properly stated a claim for relief and note that count four discusses that Chief O'Hare and Deputy Chief Pigott engaged in a campaign of harassment against Plaintiffs. Defendants responded, asserting that the Complaint falls short of showing that Chief O'Hare and Deputy Chief Pigott participated in their personal capacities because: (1) there are no allegations against Chief O'Hare that give rise to any § 1983 violations; and (2) the allegations that Deputy Chief Pigott ordered Officer Magner to

execute the arrest warrant against Plaintiff Laura fall short of showing he personally participated or knew about Officer Magner's conduct.

An individual defendant "must have had 'personal involvement in the alleged wrongdoing' in order to be liable under § 1983 because individual liability 'cannot be predicated solely on the operation of *respondeat superior*.'" *Walsifer v. Borough of Belmar*, 262 Fed. Appx. 421, 425 (3d Cir. 2008). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Here, Plaintiffs allege a § 1983 supervisory liability claim (count three) and a § 1983 unlawful policy, custom, or practice claim (count four) against Chief O'Hare and Deputy Chief Pigott. Plaintiffs further state that "[s]uit is brought against all individually named Defendants in their personal and official capacities." Compl., page 3, ¶ 11. However, any claims against Chief O'Hare and Deputy Chief Pigott in their individual capacities must be dismissed because Plaintiffs failed to allege that they "*personally* participated, condoned, or even knew of . . . [Officer Magner's] allegedly improper conduct." *Walsifer*, 262 Fed. Appx. at 425. The allegations were not made with "appropriate particularity." *Rode*, 845 F.2d at 1207.

In count three, Plaintiffs allege that Chief O'Hare and Deputy Chief Pigott "were supervisory officials . . . in charge" when Plaintiffs were assaulted and arrested. Compl., page 6, ¶ 2. They "had a duty to prevent subordinate officers . . . from violating the constitutional rights of citizens" and they "either directed Defendants . . . to violate Plaintiffs' constitutional rights or

had knowledge of and acquiesced in his/their subordinate's violations." *Id.* ¶¶ 3-4. Although Plaintiffs attempt to allege personal involvement by pleading that Chief O'Hare and Deputy Chief Pigott directed Officer Magner or had knowledge of and acquiesced to his conduct, these allegations were not made with the appropriate particularity necessary. *Rode*, 845 F.2d at 1207.

Likewise, in count four, Plaintiffs allege that Chief O'Hare and Deputy Chief Pigott "failed to train, instruct, supervise, control, and discipline" Officer Magner and Deputy Chief Pigott on, among other things, "assaulting, arresting and harassing citizens" and "using unreasonable and excessive force," they were aware of similar police citizen encounters, they failed to "adequately track departmental excessive force complaints, administrative complaints and/or use of force incidents" in violation of the Police Department's policies, practices, customs and guidelines and/or the New Jersey Attorney General's Use of Force and/or Internal affairs Guidelines, they "failed to employ any type of corrective or disciplinary measure," they had "knowledge of, or had they diligently exercised their duties to instruct, train, supervise, control and discipline Defendants . . . on a continuing basis, should have knowledge that the wrongs which were done . . . were about to be committed," had the "power to prevent or aid in preventing the commission of said wrongs," and "directly or indirectly . . . approved or ratified the . . . conduct of" Officer Magner "heretofore described" in violation of § 1983. Although Plaintiffs allege that Chief O'Hare and Deputy Chief Pigott acquiesced to Officer Magner's conduct through approval or ratification, these claims fail to state a claim for individual liability because Plaintiffs again failed to allege specific facts that, if proven, would show Chief O'Hare and Deputy Chief Pigott's personal involvement. *See Rode*, 845 F.2d at 1207. Thus, the § 1983 claims in counts three and four against Chief O'Hare and Deputy Chief Pigott in their individual capacities must be dismissed.

**F.    § 1983 Claims Against Chief O'Hare & Deputy Chief Pigott Based on Supervisory Liability and § 1983 Claim Against Keansburg Borough as a Result of Official Policy & Custom**

In counts three and four of the Complaint, Plaintiffs attempt to hold Keansburg Borough, Chief O'Hare and Deputy Chief Pigott liable for Officer Magner's actions against Plaintiffs. Defendants, however, argue that the claims against these Defendants are improper because Plaintiffs:  (1) have not alleged that Chief O'Hare and Deputy Chief Pigott were personally involved; (2) did not show supervisory liability; and (3) have not claimed that their injuries were caused by an official policy or custom, meaning the *Monell* claim against Keansburg Borough cannot stand.  The Court will first discuss supervisory liability involving Chief O'Hare and Deputy Chief Pigott and will then discuss the *Monell* claim against Keansburg Borough.

**1.    § 1983 Claims Against Chief O'Hare and Deputy Chief Pigott Based on Supervisory Liability**

Defendants argue that the § 1983 claims against Chief O'Hare and Deputy Chief Pigott are based solely on respondeat superior and therefore, must be dismissed.  First, Defendants assert that as demonstrated above, Plaintiffs have not shown that Chief O'Hare or Deputy Chief Pigott were personally involved, and therefore they are not liable in their individual capacities. *See supra* at 15-17.  Second, Defendants contend that Plaintiffs have not stated a claim based on supervisory liability because:  (1) Plaintiffs did not allege a specific supervisory policy that Defendants failed to employ that created an unreasonable risk of injury; and (2) Plaintiffs have not shown that Defendants were aware of such risk and were deliberately indifferent to it. Instead, Defendants point out that Plaintiffs just listed policies Defendants allegedly deviated from without discussing specifics.  Plaintiffs, however, assert that they have shown that Chief O'Hare and Deputy Chief Pigott were personally involved in Officer Magner's alleged wrongdoing, and they stated a claim for supervisory liability.  Plaintiffs alleged that Chief

O'Hare and Deputy Chief Pigott were Officer Magner's supervisors when Officer Magner allegedly used excessive force against Plaintiffs; moreover, Chief O'Hare and Deputy Chief Pigott were policymakers regarding the use of force, effectuating arrests, police citizen encounters, and disciplining officers, and were responsible for training officers in these areas. Furthermore, Plaintiffs claim that Chief O'Hare and Deputy Chief Pigott were aware of prior incidents where their subordinate officers would subject citizens to excessive force but did not discipline or enact any policy or remedy or provide additional training to deal with this.[7]  In their reply brief, Defendants argue that the Complaint makes only "bare boned allegations" (Drb17). For example, Defendants assert that although Plaintiffs claim that Chief O'Hare was aware of similar constitutional violations, they have not shown that he deliberately acquiesced in a longstanding policy or custom of inaction.  Additionally, Defendants contend that there is no evidence that Deputy Chief Pigott was a final policymaker for the Borough or that asking Officer Magner to follow up on motor vehicle violations is an official policy.

Because this Court already dismissed Plaintiffs' claims against Chief O'Hare and Deputy Chief Pigott in their individual capacities, the Court will discuss the claim based on supervisory liability.  *See supra* 15-17.  In order to establish supervisory liability, a plaintiff must "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or

---

[7] Plaintiffs also relied on trial testimony, but it is inappropriate to do so on a 12(b)(6) motion to dismiss. Although trial testimony is a public record, the Court "may not consider the truth of the facts asserted in . . . transcripts" on a 12(b)(6) motion. *See Yeakel v. Cleveland Steel Container Corp.*, 2011 WL 536536, *1 n.1 (E.D. Pa. Feb. 15, 2011).

procedure." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001). Plaintiff "must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the identified deficiency and the ultimate injury." *Id.* (internal quotation omitted). It is not enough to argue "that the constitutionally cognizable injury would not have occurred if the superior had done more that he . . . did." *Id.* Supervisory liability may be established "by showing a supervisor tolerated past or ongoing behavior" or failed "to train, supervise, and discipline subordinates." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011).

Here, Plaintiffs stated a claim for supervisory liability. First, Plaintiffs identified a specific supervisory practice or procedure Chief O'Hare and Deputy Chief Pigott failed to employ — they failed to "adequately track departmental excessive force complaints, administrative complaints and/or use of force incidents in violation of Keansburg Police Department policies, practices, customs and/or guidelines and/or the New Jersey Attorney General's Use of Force and/or Internal Affairs Guidelines, and/or failed to discipline officers for such violations." Compl., page 6, ¶ 5. Moreover, Plaintiffs allege that Chief O'Hare and Deputy Chief Pigott "failed to train, instruct, supervise, control, and discipline" subordinates in "using unreasonable and excessive force," among other things. Compl., page 8, ¶ 4. Plaintiffs, however, do not show that "the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of" injury. *Brown*, 269 F.3d at 216. Yet, a "reasonable inference" may be made that the failure to train subordinates on excessive force created the unreasonable risk of excessive force to Plaintiffs. *See Iqbal*, 556 U.S. at 678. Moreover, Plaintiffs allege that Chief O'Hare and Deputy Chief Pigott were aware that an unreasonable risk existed because Plaintiffs alleged that they were "aware of numerous similar

police citizen encounters involving . . . O'Hare; Pigott; [and] Magner" where "they customarily and frequently subjected citizens held in custody to . . . excessive force," among other things. Compl., page 8, ¶ 5. Furthermore, Plaintiffs alleged that Chief O'Hare and Deputy Chief Magner were indifferent to the risk. They alleged that "[d]espite their awareness, Defendants . . . failed to employ any type of corrective or disciplinary measures against" Chief O'Hare, Deputy Chief Pigott, and Officer Magner. Compl., page 8, ¶ 7. Failing to enact disciplinary measures is a "specific omission" demonstrating lack of indifference. *Brown*, 269 F.3d at 216. Lastly, a "reasonable inference" may be made that Officer Magner's violation resulted from Chief O'Hare or Deputy Chief Pigott's failure to train or failure to adequately track excessive force complaints. *Iqbal*, 556 U.S. at 678.

Plaintiffs are required to plead "sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. Plaintiffs met this standard regarding their supervisory liability claim, and the Partial Motion to Dismiss is denied as to this claim.

### 2. Monell Claims

Next, Defendants argue that all § 1983 claims against Keansburg Borough must be dismissed because: (1) Plaintiffs failed to identify or establish a policy, practice, or custom, which allegedly violated their constitutional rights; and (2) Plaintiffs failed to plead that a specific municipal policy or custom caused the alleged use of excessive force against Plaintiffs. Instead, Defendants claim that Plaintiffs made general allegations of policies that may have been violated, such as the New Jersey Attorney General's Use of Force and/or Internal Affairs Guidelines, and Plaintiffs' allegations that Defendants did not train or supervise their

subordinates is a conclusory allegation and is not enough to establish a constitutional claim. Plaintiffs, however, argue that they stated a claim for municipal liability, alleging that Chief O'Hare and Deputy Chief Pigott are policymakers in the Keansburg Police Department and that the alleged excessive force was caused by an unlawful policy, practice or custom and/or the failure to properly instruct, train, supervise, control, and discipline Officer Magner. In their reply brief, Defendants again argue that Plaintiffs cannot state a *Monell* claim because Plaintiffs did not identify specific training and disciplinary policies that could have been implemented or demonstrated that Keansburg Borough's failure to implement these policies reflects a deliberate indifference to constitutional violations.

A municipality can be sued under § 1983 "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or where "constitutional deprivations . . . [are caused by] governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690-91 (1978). The "action pursuant to official municipal policy" or custom must cause the constitutional tort. *Id.* at 691. A municipality is not liable under § 1983 "on a *respondeat superior* theory" or "*solely* because it employs a tortfeasor . . . ." *Id.* In order to establish a *Monell* claim, a plaintiff "must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg, Pa.*, 36 F.2d 903, 910 (3d Cir. 1984).

First, a plaintiff must identify a challenged policy, practice, or custom. *Id.* A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Clark v. Buchko*, 936 F. Supp. 212, 221 (D.N.J. 1996). Custom or usage

are "practices of state officials [that are] so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* (internal quotation omitted). Second, a plaintiff must attribute the policy, practice, or custom to the city itself. *Losch*, 36 F.2d at 910. Plaintiff must show that "a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). "Not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Pembaur v. City of Cincinnati*, 45 U.S. 469, 481 (1986). Instead, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* Lastly, Plaintiffs must show a causal link between the policy, practice, or custom and the injury suffered. *Losch*, 36 F.2d at 910.

Here, Plaintiffs alleged a *Monell* claim against Keansburg Borough in count four of the Complaint. First, Plaintiffs identified a challenged policy, practice, or custom. Plaintiffs allege that Chief O'Hare and Deputy Chief Pigott "failed to adequately track departmental excessive force complaints, administrative complaints and/or use of force incidents in violation of Keansburg Police Department policies, practices, and customs and/or guidelines, and/or the New Jersey Attorney General's Use of Force and/or Internal Affairs Guidelines, and/or failed to discipline officers for such violations." Compl., page 8, ¶ 6. Thus, Plaintiffs did identify a challenged policy, practice, or custom — the Keansburg Police Department policies, practices, and customs, and the New Jersey Attorney General's Use of Force and/or Internal Affairs Guidelines.

In addition, Plaintiffs allege that Chief O'Hare and Deputy Chief Pigott "failed to train, instruct, supervise, control, and discipline" Officer Magner in "using unreasonable and excessive force," among other things. Compl., page 8, ¶ 4. Municipal liability based on a deficient

training policy requires a showing of: "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Freedman v. City of Allentown,* Pa, 853 F.2d 1111, 1117 (3d Cir. 1988). "Mere conclusory allegations . . . that the defendants deliberately elected not to train are not enough to support a constitutional claim." *Id.* Inadequate "police training may serve as the basis for municipal liability under section 1983 if the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come in contact. To meet the deliberate indifference standard, the failure to train must reflect a deliberate or conscious choice made by city policymakers." *Fagan v. City of Vineland*, 22 F.3d 1283, 1291 (3d Cir. 1994). Plaintiffs stated a *Monell* claim based on a deficient training policy because they alleged "knowledge of a prior pattern of similar incidents" by stating that that Keansburg Borough, Chief O'Hare, and Deputy Chief Pigott "were aware of numerous similar police citizen encounters involving" Officer Magner whereby he "used unreasonable and excessive force on citizen/arrestees." Compl., page 8, ¶ 5. Moreover, Plaintiffs alleged that the failure to train reflected a deliberate indifference to the rights of persons with whom the police come in contact with; specifically, Plaintiffs alleged that Defendants "failed to adequately track departmental excessive force complaints," "failed to employ any type of corrective or disciplinary measures" against officers, and "had power to prevent or aid in preventing the commission of said wrongs . . . and . . . with deliberate indifference failed to do so." Compl., page 8-9, ¶¶ 6, 7, 9. Thus, Plaintiffs identified challenged policies, practices, or customs.

Second, Plaintiffs attributed the policy, practice, or custom to Keansburg Borough. An "official must . . . be responsible for establishing final government policy respecting such

activity before the municipality can be held liable." *Pembaur*, 45 U.S. at 482-83. Although Plaintiffs do not specifically allege that Chief O'Hare or Deputy Chief Pigott were responsible for establishing final government policy, they do allege that Chief O'Hare and Deputy Chief Pigott were "vested by state law with the authority to make policy on: (1) the use of force; internal affairs investigations . . . pursuant to Keansburg Police Department policies, practices and/or customs and/or the New Jersey Attorney General's Use of Force and/or Internal Affairs Guidelines; (2) effectuating arrests; (3) police citizen encounters, and/or (4) disciplining officers." Compl., page 7, ¶ 2. Thus, it can be reasonably inferred that Chief O'Hare and/or Deputy Chief Pigott are responsible for establishing final government policy on use of force.

Lastly, Plaintiffs have alleged a causal link between the policy, practice, or custom and the injuries they suffered. Specifically, Plaintiffs allege that "[a]s a direct and proximate result of the acts of Defendants Borough of Keansburg," Chief O'Hare, and Deputy Chief Pigott, Plaintiffs "suffered physical injury . . . ." Compl., page 9, ¶ 11. Thus, Plaintiffs have alleged sufficient facts to state a *Monell* claim, and as a result, Defendants' Motion to Dismiss this claim must be denied.

## G. Loss of Consortium

Defendants argue that a loss of consortium claim is not cognizable under § 1983 and therefore must be dismissed. Although Plaintiffs did not oppose this argument in their opposition brief, they stated in a letter to the Court filed on May 14, 2013, that they do not agree to a dismissal of their loss of consortium claims. Nevertheless, loss of consortium claims are not cognizable under § 1983 because § 1983 allows only personal rights of action. *See Verde v. City*

*of Philadelphia*, 862 F. Supp. 1329, 1337 n.5 (E.D. Pa. 1994); *see also Jean-Louis v. Clifford*, 2012 WL 274031, *8 (D.N.J. Jan. 31, 2012); *Laute v. City of Gloucester*, 2012 WL 253132, *4 (D.N.J. Jan. 25, 2012); *Pagan v. Twp. Of Raritan*, 2006 WL 2466862, *9 (D.N.J. Aug. 23, 2006). Therefore, the loss of consortium claims must be dismissed.

### H.      State Law Claims

Defendants argue that this Court has jurisdiction over Plaintiffs' state law claims, but they must be dismissed. Plaintiffs, however, assert that the state law claims should not be dismissed because this Court has supplemental jurisdiction over them.

In "any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. However, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Burnsworth v. PC Lab.*, 364 Fed. Appx. 772, 776 (3d Cir. 2010). Thus, this Court has supplemental jurisdiction over Plaintiffs' state law claims because not all of Plaintiffs' federal claims have been dismissed.

### I.      Plaintiff Annmarie's State Law Abuse of Process Claim

Defendants argue that Plaintiff Annmarie's state law abuse of process claim in count seven of the Complaint must be dismissed for the same reasons the Court dismissed her federal

abuse of process claim — Plaintiff Annmarie's arrest was not based upon some objective other than for what it was intended. Defendants explain that Annmarie was arrested for aggravated assault, hindering apprehension, and obstruction, and she was adjudicated delinquent of these claims. Plaintiffs, however, assert that Annmarie states a cause of action for abuse of process under state law.

Under New Jersey law, "[a] successful claim of malicious abuse of process first requires a defendant's improper, unwarranted and perverted use of process after it has been issued," and defendant "must also reveal, after process has been issued, an ulterior purpose in securing it by committing 'further acts' which reveal a motive to coerce or oppress the plaintiff." *Wozniak v. Pennella*, 373 N.J. Super. 445, 461 (App. Div. 2004), *certif. denied*, 183 N.J. 212 (2005). Here, Plaintiffs do not allege sufficient facts to state an abuse of process claim on behalf of Annmarie. Plaintiff Annmarie was arrested and adjudicated delinquent of aggravated assault on a police officer, hindering apprehension, and obstruction. Although Plaintiffs allege that Defendants engaged in a campaign of harassment against Plaintiffs because they complained about the way in which snow was being removed and placed on an empty lot next to their home, it is unclear how this is connected to Annmarie's arrest. Moreover, Plaintiffs allege that Defendants engaged in further acts, including "maliciously, intentionally, recklessly, and/or negligently misrepresent[ing] the facts of their encounter with Plaintiffs," falsifying police records, and mishandling evidence "to initiate and/or instigate a criminal prosecution of Plaintiffs." Compl., page 12, ¶ 4. Defendants allegedly did this to "gain an advantage over Plaintiffs' certain constitutional claims and/or to protect their interest in their employment and/or to protect themselves from criminal prosecution and civil liability," *id.* at ¶ 5, but these further acts do not show an ulterior motive or a motive to coerce or oppress Annmarie. Therefore, Plaintiffs have

not stated sufficient facts to state an abuse of process claim against Plaintiff Annmarie, and consequently, the state law abuse of process claim must be dismissed as to her.

### J.  Punitive Damages

Defendants argue that there cannot be a claim for punitive damages against Keansburg Borough under § 1983 or the New Jersey Civil Rights Act ("NJCRA").  Plaintiffs concede that they are not entitled to punitive damages from Keansburg Borough.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (declaring that "a municipality is immune from punitive damages under 42 U.S.C. § 1983"); *Damiani v. West Deptford Twp.*, 2008 WL 656041, *5 (D.N.J. Mar. 7, 2008) (stating that "the NJCRA is functionally equivalent to § 1983, a statute that proscribes awarding punitive damages against public entities" and dismissing Plaintiff's punitive damages claims).  Thus, Plaintiffs' punitive damages claim against Keansburg Borough is dismissed.

### K.  Plaintiffs' Request for Leave to Amend Their Complaint

Plaintiffs request leave to amend the Complaint to remedy any perceived defect because this Court granted in part Defendants' Partial Motion to Dismiss.  Plaintiffs assert that granting leave to amend will not be inequitable or futile.  Defendants, however, contend that this Court should not grant leave to amend because "regardless of any newly added information, no amount of evidence or facts will change the fact that" Plaintiff Annmarie cannot sustain a cause of action for excessive force and abuse of process and Chief O'Hare and Deputy Chief Pigott are not personally liable for the alleged actions (Drb19).  As a result, Defendants point out that granting leave to amend will be a "waste of time."  *Id.*

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed.R.Civ.P. 15(a)(1). After this, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). The following grounds, however, "could justify a denial of leave to amend": undue delay, bad faith, dilatory motive, prejudice, and futility. *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000). The "first four of these reasons devolve to instances where permitting amendment would be inequitable." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Thus, in "civil rights cases[,] district courts must offer amendment . . . when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Futility exists when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane*, 213 F.3d at 115. In assessing futility, the Court applies the Rule 12(b)(6) standard. *Id.*

Although courts usually grant leave to amend in civil rights cases, it would be futile to do so here. An amended complaint would still fail to state a claim upon which relief could be granted regarding Plaintiff Annmarie's excessive force claim, federal and state abuse of process claims, and the claims against Chief O'Hare and Deputy Chief Pigott in their individual capacities. Therefore, the Complaint will be partially dismissed with prejudice.

**III.     CONCLUSION**

For the foregoing reasons, Defendants' Partial Motion to Dismiss the Complaint is granted in part and denied in part.  An appropriate Order accompanies this Opinion

Dated: June 13, 2013                                    /s/ Joel A. Pisano
                                                                  JOEL A. PISANO
                                                                  United States District Judge